# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2367

_____

Jeffrey Hutchison,

        Appellant,

v.

Urschel Laboratories, Inc.,

        Appellee.

\* Appeal from the United States
\* District Court for the Western
\* District of Missouri.

_____

Submitted: April 13, 1998
Filed: October 7, 1998

_____

Before WOLLMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

BEAM, Circuit Judge.

In this products liability action, Jeffrey Hutchison appeals a jury's verdict in favor of Urschel Laboratories, Inc., the manufacturer of a piece of machinery that Hutchison was using when he was injured at work. Hutchison argues that the district court[1] erred in not directing judgment in his favor on the issue of liability and in admitting certain evidence. We find no error and therefore affirm.

_____

[1]The Honorable James C. England, United States Magistrate Judge for the Western District of Missouri, presiding with consent of the parties pursuant to 28 U.S.C. § 636(b)(4)(c)(1).

## I.    BACKGROUND

Hutchison worked at the Tyson Foods chicken processing plant in Neosho, Missouri. His job was to place rolls of processed chicken into a machine that cut the rolls into slices. These slices were dropped onto a conveyor belt which carried the slices to a dicing machine. The conveyor belt lobbed the chicken through the air and the slices fell into a dicer which cut them into cubes and dropped the chicken onto another conveyor belt for further processing. If all worked well, the slices of chicken fell directly into the cutting area. Occasionally the slices did not fall directly into the cutting part of the machine, and an employee would take a Teflon "wand" and push down the chicken that had stuck to the sides of the opening. While doing this, Hutchison slipped, and his hand was pulled into the dicer, causing severe injuries.

Urschel manufactured the dicing machine in 1972. The standard Urschel dicer was designed to be fed manually with an operator pushing the food to be diced into an opening. Therefore, the opening was relatively small and had a safety bar placed inside the opening to prevent workers from inadvertently placing their hands too close to the cutting part of the machine. However, this standard-sized opening and safety bar feature was not compatible with the existing automated line in Neosho. Therefore, Tyson had specially ordered this dicer, serial number 433, with an oversized opening and without a safety bar. Urschel did not manufacture any of the other equipment in this system and did not design the overall assembly-line process. In fact, when it shipped dicer 433, Urschel had included a letter to Tyson that the larger opening was potentially dangerous, and that after the dicer was integrated into Tyson's existing line, the opening should be guarded to prevent workers from being able to reach moving parts with their hands.

Hutchison sued Urschel in Missouri state court, alleging that the dicer was in a defective condition when it left Urschel's plant in 1972, and that it was unreasonably dangerous when used in the reasonably anticipated manner. The case was removed to

federal district court pursuant to 28 U.S.C. § 1446. After a three day trial, the jury returned a verdict in favor of Urschel. Hutchison appeals.

## II.   DISCUSSION

Hutchison's first claim on appeal is that the district court should have directed judgment in his favor on the issue of liability pursuant to Federal Rule of Civil Procedure 50 because Urschel admitted that dicer 433 was unreasonably dangerous. Hutchison relies on Urschel representatives' repeated admissions that the dicer was dangerous. Hutchison also places a great deal of emphasis on a letter written by Urschel to Tyson in 1972, wherein Urschel warns that the machine is potentially "very dangerous."

Hutchison confuses "dangerous" with "unreasonably dangerous." Although Urschel did concede that dicer 433 was dangerous, it never admitted that it was <u>unreasonably</u> dangerous. A plaintiff must prove <u>unreasonable</u> danger in order to establish liability. <u>See</u> <u>Nesselrode v. Executive Beechcraft, Inc.</u>, 707 S.W.2d 371, 375 (Mo. 1986) (en banc) (to recover in strict liability a plaintiff must establish that the product is unreasonably dangerous).

Hutchison also argues that he was entitled to judgment on liability because dicer 433 did not meet the National Safety Counsel Guideline guarding standards. The standards at issue here, however, were promulgated in 1994. Dicer number 433 was manufactured and shipped in 1972. A machine's failure to meet safety standards that were promulgated more than twenty years after its manufacture does not establish liability per se.

Hutchison argues that the liability issue was erroneously clouded when the trial court admitted evidence that Tyson had ordered this machine with a larger than standard opening. It is uncontested that Tyson special ordered the dicer. However,

Hutchison claims that in presenting this evidence, Urschel was trying to shift to Tyson its non-delegable duty to manufacture reasonably safe equipment. Hutchison points to Urschel's position at trial that it was Tyson's duty to place guards on this machine once it was incorporated into the existing processing line.

Contrary to Hutchison's view, the record shows that Urschel's evidence was directed toward whether it was feasible for Urschel to design guards when dicer 433 would later be integrated into an existing processing line. There was testimony that it is standard industry practice for the end-user to incorporate safety features when machinery will be used in an integrated line. The defense expert testified that it would be impossible for Urschel to adequately guard a dicer that was to be used as part of an unfamiliar assembly line that Urschel had not designed. Thus, this was not an attempt on Urschel's behalf to shift responsibility, but an attempt to establish a defense based on feasibility.

Hutchison additionally argues that the trial court erred in admitting a picture of a similar machine that was in operation in another Tyson plant. This dicer, serial number 593, had been ordered with the standard features. However, some time after delivery, Tyson had enlarged the opening and removed the safety bar. Hutchison argues that admitting this evidence was reversible error because the condition of dicer 593 was legally irrelevant and unduly prejudicial. Hutchison, however, first injected dicer 593 into the trial by offering a picture of dicer 593 into evidence. Hutchison's expert testified that he drew conclusions about the defectiveness of dicer 433 after watching dicer 593 in action. The expert admitted on cross-examination that he was not aware that the dicer's opening had been enlarged. Once Hutchison tried to use dicer 593 to prove that dicer 433 was unreasonably dangerous, Urschel was entitled to explain that dicer 593 had been modified since its manufacture. Furthermore, this evidence was highly relevant to the issue of feasibility—it showed that Tyson was in a better position to know how these dicers were used in its processing lines, and that Tyson had the ability to modify the machines to meet those unique needs.

Hutchison's final claim on appeal is that the court erred in allowing evidence that there have been no previous accidents with dicer 433. Urschel elicited testimony that witnesses knew of no prior accidents involving the dicer. Tyson's vice president testified that he was informed of all serious accidents in Tyson's production plants. He also stated that he was not aware of any other accident involving dicer 433. Hutchison argues that there could have been minor incidents which were not reported. However, counsel was allowed to argue this point to the jury at trial. Even if admitting this evidence were error, which we doubt, we are confident that it was harmless.

## III.  CONCLUSION

We have considered each of Hutchison's remaining arguments and find them to be without merit. For the foregoing reasons, the decision of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.